IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LANCE W. SLAUGHTER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | Judge |
| WELLS FARGO & COMPANY; WELLS FARGO ADVISORS, LLC; WACHOVIA SECURITIES FINANCIAL HOLDINGS, LLC | Jury Trial Requested |
| Defendants. | |

**COMPLAINT**

Plaintiff Lance Slaughter ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, Stowell & Friedman, Ltd., hereby files this Complaint of race discrimination against Defendants Wells Fargo & Company, Wells Fargo Advisors, LLC, and Wachovia Securities Financial Holdings, LLC (collectively "Wells Fargo," "Defendant," or "the Firm"), and in support states as follows:

**OVERVIEW**

1. Wells Fargo & Company is a leader in the financial services industry, listed by Forbes as one of the Top 20 Biggest Public Companies in the World. Wells Fargo claims to serve "one in three U.S. households" and 70 million customers, and maintain assets of $1.4 trillion, earning a No. 1 rank among U.S. banks in total market capitalization.[1]

2. Through its subsidiaries, Wells Fargo is also one of the largest providers of financial advisory and brokerage services. With more than 1,375 Wells Fargo Advisor locations

---

[1] http://www.dailyfinance.com/2013/07/28/the-biggest-banks-on-the-sp-500/.

across the U.S.,[2] Wells Fargo employs over 15,000 registered brokers, called Financial Advisors ("FAs"), to provide brokerage and wealth management services and serve as the face of Wells Fargo to its individual and institutional clients. Wells Fargo provides widely divergent compensation and opportunities to these Financial Advisors, however, depending on their race.

3. African Americans are underrepresented both as Financial Advisors and in management and executive positions at Wells Fargo, and are paid substantially less than their counterparts who are not African American. These disparities result from Wells Fargo's systemic, intentional race discrimination and from policies and practices that serve no reasonable business purpose yet have a disparate impact on African Americans.

4. Plaintiff, and the class he seeks to represent, alleges that Wells Fargo employs company-wide teaming and account distribution policies and practices that deny African Americans the same business opportunities as employees who are not African American. Wells Fargo's teaming and account distribution policies and practices exclude African Americans from lucrative teams and client account distributions and segregate its workforce by race.

5. Plaintiff has filed this lawsuit to hold Wells Fargo accountable for its unlawful treatment of African Americans and to achieve meaningful reform. This lawsuit is brought by Plaintiff on behalf of himself and other African American Wells Fargo Financial Advisors[3] and Trainees who work or worked for the Firm and have been harmed by its company-wide pattern or practice of race discrimination and discriminatory policies and practices. This action seeks class-wide injunctive relief and an end to Wells Fargo's discriminatory practices.

---

[2] https://www.wellsfargo.com/downloads/pdf/invest_relations/wf2011annualreport.pdf.
[3] As used herein, the term Financial Advisors includes Financial Advisor Trainees and "producing" managers, *i.e.* those given manager titles or responsibilities but who also maintain a retail brokerage book of business.

## JURISDICTION AND VENUE

6. Plaintiff's claims arise under 42 U.S.C. § 1981, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.[4]

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). Defendant is licensed to do business and maintains a number of branch offices in this District. The unlawful conduct alleged in this Complaint occurred in this District and across the United States.

## PARTIES

8. Defendant Wells Fargo & Company, the parent corporation of Defendant Wachovia Securities Financial Holdings, LLC, is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware and headquartered in San Francisco. In 2012, Wells Fargo achieved revenues of approximately $86.1 billion and a net income of nearly $18.9 billion and maintained shareholders' equity of nearly $158 billion.[5] Wells Fargo manages approximately $1.2 trillion of client assets and provides a wide variety of financial products and services to its global and domestic clients, who include corporations, governments, financial institutions and individuals.

9. As part of its brokerage, investment advisory, and financial and wealth planning services, Wells Fargo employs more than 15,000 persons nationwide as Financial Advisors to service clients in over 1,375 offices in the United States. Wells Fargo Advisors, LLC, is registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and with the

---

[4] Plaintiff intends to amend this Complaint to add individual and class claims of disparate impact and disparate treatment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* after he has exhausted his administrative filing requirements by receiving a notice of right to sue from the Equal Employment Opportunity Commission.
[5] https://␣www.wellsfargo.com/downloads/pdf/invest_relations/2012-annual-report.pdf

3

Commodity Futures Trading Commission ("CFTC") as a futures commission merchant. Wells Fargo Advisors, LLC, and its subsidiaries, are directly and indirectly owned by Wachovia Securities Financial Holdings, LLC, which is a wholly owned subsidiary of Wells Fargo & Company. [6]

10. On January 1, 2009, Wells Fargo & Company completed its merger with Wachovia Corporation, effective December 31, 2008, creating North America's most extensive distribution system for financial services.[7]

11. Plaintiff Lance Slaughter ("Slaughter") is African American and has been employed by Defendant as a Financial Advisor in the Washington, D.C. branch office since 2005. Throughout his employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Slaughter was denied business opportunities, including lucrative client accounts and inclusion in favorable broker teams, on account of his race and was treated worse than similarly situated Wells Fargo employees who are not African American. Slaughter has also been denied management opportunities for which he was well-qualified on account of his race. Slaughter lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

## FACTUAL ALLEGATIONS

12. Wells Fargo maintains stereotypical views about the skills, abilities and potential of African Americans that form the basis of its policies and result in the segregation and differential treatment of African American Financial Advisors. Wells Fargo maintains race-based attitudes about its clients as well as its Financial Advisors. Wells Fargo's racial bias is

---

[6] https://www.wellsfargoadvisors.com/pdf/wfa_statement_of_financial_condition_audited.pdf.
[7] https://www.wellsfargo.com/press/2009/20090101_Wachovia_Merger. Wachovia itself had previously absorbed Prudential Securities in 2003 in addition to A.G. Edwards in 2006.

4

illustrated by racial redlining and other discriminatory practices against customers of color, as illustrated in a number of recent lawsuits and settlements. For example, in 2011, a jury found Wells Fargo guilty of systematically discriminating against minority home buyers by making them pay more for their home loans than white borrowers. *Opal Jones, et. al v. Wells Fargo Bank, N.A., et al.*, Case No. BC337821 (Los Angeles Superior Court) ($3.5 million verdict).

13. Wells Fargo has paid hundreds of millions of dollars to avoid litigating its discriminatory practices. Wells Fargo recently agreed to a settlement valued at over $440 million of a lawsuit challenging the Firm's redlining practices that resulted in a disproportionate number of foreclosures in African American neighborhoods in Shelby County and the City of Memphis. *City of Memphis and Shelby County, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 2:09-CV-02857 (W.D. Tenn.). In 2013, Wells Fargo paid $175 million to settle a lawsuit brought by the United States Department of Justice alleging that the Firm charged higher rates to its African American and Latino borrowers. *United States v. Wells Fargo Bank, NA*, Case No. 1:12-cv-01150 (D.D.C.). Wells Fargo also settled a lawsuit for $37 million led by the National Fair Housing Alliance alleging that Wells Fargo took better care of foreclosed properties that it owned in white neighborhoods than those in African American and Latino communities. *National Fair Housing Alliance, et al. v. Wells Fargo Bank N.A., et al*, HUD Case No. 09-12-0708-8 (U.S. Department of Housing & Urban Development Office of Fair Housing & Equal Opportunity)

14. Unsurprisingly, the Wells Fargo wealth management business unit, too, has been charged with systemic discrimination favoring its white male Financial Advisors. In 2009, female brokers filed a nationwide sex discrimination lawsuit against Wells Fargo and Wachovia, *Carter et al. v. Wells Fargo Advisors, LLC et al.*, No. 1:09-CV-01752-CKK (D.D.C.), challenging, among other things, Wells Fargo's policy of account distribution and company-

approved teaming or "partnership" arrangements. The female advisors alleged that they received less compensation than similarly situated male brokers due to discriminatory account distributions and the denial of opportunities to female brokers to join teams. The *Carter* lawsuit was resolved for $32 million in 2010 by a court-approved stipulation of settlement and consent decree. The *Carter* consent decree became effective in 2011 and mandated, among other things, transparency in the account distribution process and additional requirements for formality and branch manager approval of team partnership arrangements between brokers. Despite the existing consent decree, Plaintiff understands that Wells Fargo's policies and practices continue the Firm's preference for white men.

15. Wells Fargo maintains strict, centralized control over its wealth management business from its company headquarters, where an all-white team of senior executives issue mandatory company policies that apply to all members of the Wells Fargo Financial Advisor workforce.

16. The Financial Advisors who work at Defendant's branch offices across the country develop, advise and service the Firm's clients. Wells Fargo compensates its FAs pursuant to uniform, nationwide compensation plans centrally issued every year. Due to the commission-based incentive system under which FAs are compensated, a level playing field and fair distribution of resources and business opportunities is essential. Defendant's policies and practices, however, do not create an equal playing field for African Americans but result in significant compensation disparities. These disparities are driven in large part by Defendant's discriminatory policies and practices with regard to the distribution of client accounts and Financial Advisor teams or pools, i.e. shared accounts and books of business between Financial Advisors.

17. Wells Fargo has designed, implemented and maintains uniform, company-wide teaming and account distribution policies and practices that segregate its workforce and discriminate against African Americans.

18. Under Defendant's teaming policies and practices, Financial Advisors are permitted to form teams and combine their client accounts and books of business, subject to management approval. Wells Fargo encourages the formation of teams and confers special policy advantages, resources, and benefits to teams and to FAs on teams. Team members can receive credit for client accounts and production credits they did not generate, and teams steer client assets and business opportunities to FAs and FA Trainees who would not otherwise receive these assets and opportunities. African American FAs are almost entirely excluded from favorable teams. As a result of racial stereotypes and discrimination, the skills and contributions of African American FAs are not valued, and they are not selected or permitted to join teams as equal partners, to their distinct disadvantage under Defendant's policies.

19. The Wells Fargo account distribution policy, called the Financial Advisor Book Reassignment ("FABR") policy, discriminates against African American FAs by (1) distributing lucrative client accounts to FAs based on membership in teams and pools, from which African Americans are largely excluded, and (2) relying on factors that disproportionately benefit white FAs, including "by prescribing criteria that favor the already successful – those who may owe their success to having been invited to join a successful or promising team." *McReynolds v. Merrill Lynch*, 672 F.3d 482, 490 (7th Cir. 2012).

20. In sum, Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on African Americans. Defendant's systemic discrimination against

African Americans includes, but is not limited to, the following practices:

   a) Employing firm-wide teaming and pooling policies and practices that disproportionately exclude African Americans from lucrative teams and pools and result in a segregated workforce and substantial racial disparities in earnings and attrition rates;

   b) Employing firm-wide account transfer and distribution policies and practices that disproportionately steer lucrative client accounts and other business opportunities to Financial Advisors who are not African American;

   c) Employing firm-wide training policies and practices that rely on factors that disproportionately harm African American Financial Advisor trainees; and

   d) Employing firm-wide compensation policies and practices that disadvantage African Americans.

21. The discrimination described above is ongoing and constitutes a continuing violation of the civil rights laws.

22. The racially discriminatory policies and practices at Wells Fargo are uniform and national in scope. Class members relying on Plaintiff to protect their rights work or worked at Wells Fargo offices across the country and were harmed by these same policies and practices.

**Plaintiff Was Injured By Defendants' Unlawful Conduct**

23. Plaintiff, like other African American FAs and FA trainees, suffered substantial harm as a result of Defendant's unlawful policies and practices and systemic discrimination. Among other things, Plaintiff was denied membership and the benefits of favorable team or pooling relationships due to his race. Although many Financial Advisors have departed or retired from Plaintiff's branch office during his tenure, Plaintiff has not received the valuable client account distributions provided to his colleagues who are not African American under the Firm's FABR policy.

24. Plaintiff has also been denied management opportunities as a result of

8

Defendant's discriminatory management grooming, assessment, training and selection practices, which systematically and disproportionately exclude African Americans from branch management, and most management-feeder positions. Plaintiff Slaughter is a successful, experienced FA and is well-qualified to join management. Wells Fargo recruited Slaughter after a successful career at Merrill Lynch. Slaughter requested but was regularly denied management opportunities. Similarly-situated non-African Americans, including those who never expressed interest in management, were selected for management opportunities, management training, management feeder positions, and were assigned to manage Defendant's branch offices.

25. Plaintiff lost wages and other benefits, suffered emotional distress, and his career was irreparably injured as a result of Wells Fargo's conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other nonpecuniary losses as a direct result of Wells Fargo's conduct.

26. The actions of the Defendants have caused and continue to cause Plaintiff substantial losses in earnings, management opportunities and other employment benefits, in an amount to be determined by a jury.

## CLASS ALLEGATIONS

27. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of African Americans who worked for Defendant as Financial Advisor Trainees or Financial Advisors and who were subjected to discrimination by Defendant due to their race. Plaintiff seeks certification of a liability and injunctive and declaratory relief class under Rule 23(b)(2) and 23(c)(4), and/or certification of a broader class under Rule 23(b)(3). All requirements of class certification are met by the proposed class.

28. The class of African American employees and former employees is so numerous that joinder of all members is impracticable. Fed. R.Civ.P. 23(a)(1).

29. There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R.Civ.P. 23(a)(2).

30. The claims alleged by Plaintiff are typical of the claims of the class. Fed. R.Civ.P. 23(a)(3).

31. Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R.Civ.P. 23(a)(4).

32. The issue of determining liability regarding whether Defendant's teaming and account distribution policies and practices result in a pattern or practice of intentional discrimination and/or have a disparate impact on African Americans is appropriate for issue certification under Rule 23(c)(4). Other common issues are also appropriate for certification.

33. Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with regard to the class as a whole. Fed. R.Civ.P. 23(b)(2).

34. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3).

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. SECTION 1981

35. Plaintiff, on behalf of himself and those similarly situated, realleges paragraphs 1 through 34 and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

36. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

37. Defendant maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

38. Plaintiff and all those similarly situated were subjected to and harmed by Defendant's systemic and individual discrimination.

39. Defendant's unlawful conduct resulted in considerable harm to Plaintiff and all those similarly situated.

40. On behalf of himself and the class he seeks to present, Plaintiff requests the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find against Defendant as follows:

a. Certify this case as a class action;

b. Designate Plaintiff as a Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c. Declare that Defendant's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. Section 1981 and 42 U.S.C. 2000e *et seq.*;

11

d. Declare that Wells Fargo engaged in a pattern and practice of racial discrimination against African Americans;

e. Order Plaintiff and all others similarly situated reinstated to their appropriate positions, promotions and seniority, and otherwise make Plaintiff whole;

f. Award Plaintiff and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Wells Fargo's unlawful conduct;

g. Award Plaintiff and all others similarly situated compensatory and punitive damages;

i. Award Plaintiff and all others similarly situated prejudgment interest and attorneys fees, costs and disbursements, as provided by law;

j. Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff.

k. Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted on behalf of Plaintiff and those similarly situated,

s\ Suzanne E. Bish

STOWELL & FRIEDMAN LTD.


Linda D. Friedman
Suzanne E. Bish  (#06242534)
George S. Robot
STOWELL & FRIEDMAN LTD
303 W. Madison
Suite 2600
Chicago, Illinois  60606
(312) 431-0888