IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LANCE W. SLAUGHTER, MICHAEL SMITH, ERIKA WILLIAMS, LUCIEN PHILIPPE, KEITH SPELMON, and KATRINA EVERETT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>WELLS FARGO ADVISORS, LLC,<br><br>        Defendant. | Case No. 13-cv-06368<br><br>Judge Harry D. Leinenweber<br><br><br>Jury Trial Requested |

## THIRD AMENDED COMPLAINT

Plaintiffs Lance Slaughter, Michael Smith, Erika Williams, Lucien Philippe, Keith Spelmon, and Katrina Everett ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., hereby file this Third Amended Complaint of race discrimination against Defendant Wells Fargo Advisors, LLC[1] ("Wells Fargo," "Defendant," or "the Firm"), and in support state as follows:

### OVERVIEW

1.    Wells Fargo & Company is a leader in the financial services industry, listed by Forbes as one of the Top 20 Biggest Public Companies in the World. Wells Fargo claims to serve "one in three U.S. households" and 70 million customers, and maintains assets of $1.4 trillion, earning a No. 1 rank among U.S. banks in total market capitalization.[2]

---

[1] Plaintiff Slaughter initially included Wells Fargo & Company and Wachovia Securities Financial Holdings, LLC, as defendants to this action. Defendant has since represented to this Court (Dkt. 16) that these entities are holding companies and not direct or indirect employers of Slaughter or other Financial Advisors. Relying on Defendant's representations, Plaintiffs have removed those entities as defendants.
[2] http://www.dailyfinance.com/2013/07/28/the-biggest-banks-on-the-sp-500/.

2. Through its subsidiaries, Wells Fargo is also one of the largest providers of financial advisory and brokerage services. With more than 1,375 Wells Fargo Advisor locations across the U.S.,[3] Wells Fargo employs over 15,000 registered brokers, called Financial Advisors ("FAs"), to provide brokerage and wealth management services and serve as the face of Wells Fargo to its individual and institutional clients. Wells Fargo provides widely divergent compensation and opportunities to these Financial Advisors, however, depending on their race.

3. African Americans are underrepresented both as Financial Advisors and in management and executive positions at Wells Fargo, and are paid substantially less than their counterparts who are not African American. These disparities result from Wells Fargo's systemic, intentional race discrimination and from policies and practices that serve no reasonable business purpose yet have a disparate impact on African Americans.

4. Plaintiffs, and the class they seek to represent, allege that Wells Fargo employs company-wide teaming, account distribution, and territory and banking support assignment policies and practices that deny African Americans the same business opportunities as employees who are not African American. These policies and practices exclude African Americans from lucrative teams and client account distributions and segregate the Firm's workforce by race.

5. Plaintiffs have filed this lawsuit to hold Wells Fargo accountable for its unlawful treatment of African Americans and to achieve meaningful reform. This lawsuit is brought by Plaintiffs on behalf of themselves and other African American Wells Fargo Financial Advisors and Trainees who work or worked for the Firm and have been harmed by its company-wide pattern or practice of race discrimination and other discriminatory policies and practices. This action seeks class-wide injunctive relief and an end to Wells Fargo's discriminatory practices.

---

[3] https://www.wellsfargo.com/downloads/pdf/invest_relations/wf2011annualreport.pdf.

**JURISDICTION AND VENUE**

6. Plaintiffs' claims arise under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). Defendant is licensed to do business and maintains a number of branch offices in this District and services clients who are residents of this District. Plaintiffs Smith and Williams reside in this District and worked for and were harmed by Wells Fargo in this District. The unlawful conduct alleged in this Complaint occurred in this District and across the United States.

**PARTIES**

8. Wells Fargo Advisors, LLC, and its subsidiaries, are directly and indirectly owned by Wachovia Securities Financial Holdings, LLC, which is a wholly owned subsidiary of Wells Fargo & Company.[4] Wells Fargo & Company is a publicly-traded, global financial services firm and Fortune 500 corporation that is incorporated in Delaware, headquartered in San Francisco, and conducts business throughout the United States. In 2012, Wells Fargo & Co. achieved revenues of approximately $86.1 billion and a net income of nearly $18.9 billion and maintained shareholders' equity of nearly $158 billion.[5] Wells Fargo & Co. manages approximately $1.5 trillion of client assets and provides a wide variety of financial products and services to its global and domestic clients, who include corporations, governments, financial institutions and individuals.

9. As part of its brokerage, investment advisory, and financial and wealth planning services, Wells Fargo employs more than 15,000 persons nationwide as Financial Advisors to service clients in over 1,375 offices in the United States. Wells Fargo Advisors, LLC, is

---

[4] https://www.wellsfargoadvisors.com/pdf/wfa_statement_of_financial_condition_audited.pdf.
[5] https://www.wellsfargo.com/downloads/pdf/invest_relations/2012-annual-report.pdf

registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant.

10. On January 1, 2009, Wells Fargo & Company completed its merger with Wachovia Corporation, effective December 31, 2008, creating North America's most extensive distribution system for financial services.[6]

11. Plaintiff Lance Slaughter ("Slaughter") is African American and has been employed by Defendant's Private Client Wealth Management Group ("PCG") as a Financial Advisor in the Washington, D.C. branch office since 2005. Throughout his employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Slaughter has been denied resources and business opportunities, including lucrative client accounts and inclusion in favorable broker teams and pooled accounts ("pools"), on account of his race and has been treated worse than similarly situated Wells Fargo employees who are not African American. Slaughter has also been denied management opportunities, for which he was well-qualified, on account of his race. Slaughter has lost income and otherwise been harmed as a result of Defendant's unlawful conduct.

12. Plaintiff Michael Smith ("Smith"), a resident of this District, is African American and was employed by Wells Fargo as a PCG Financial Advisor in the Joliet, Willowbrook, and Palos Heights, Illinois branch offices from 2003 to 2013. Throughout his employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Smith was denied resources and business opportunities, including lucrative client accounts and inclusion in favorable broker teams and pools, on account of his race and was treated worse than similarly situated Wells Fargo employees who are not African

---

[6] https://www.wellsfargo.com/press/2009/20090101_Wachovia_Merger. Wachovia itself had previously absorbed Prudential Securities in 2003 in addition to A.G. Edwards in 2006.

4

American. Smith lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

13. Plaintiff Erika Williams ("Williams"), a resident of this District, is African American and was employed by Defendant as a PCG Financial Advisor Trainee in its Deerfield, Illinois branch office from February 2012 until she was unlawfully terminated in the summer of 2013. Throughout her employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Williams was denied management support, resources, and business opportunities, including lucrative client accounts and inclusion in favorable broker teams and pools, on account of her race and treated worse than similarly situated Wells Fargo employees who are not African American. Williams lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

14. Plaintiff Lucien Philippe ("Philippe") is African American and has been employed by Defendant's WBS group as a Financial Advisor in New Jersey bank locations since 2010. Throughout his employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Philippe has been assigned to less favorable territories; denied resources and business opportunities, including lucrative client accounts, inclusion in favorable broker teams and pools, and licensed banker and private banking support on account of his race; and treated worse than similarly situated Wells Fargo employees who are not African American. Philippe has lost income and otherwise been harmed as a result of Defendant's unlawful conduct.

15. Plaintiff Keith Spelmon ("Spelmon") is African American and was employed by Wells Fargo as a WBS Financial Advisor in Atlanta, Georgia bank locations from 2010 until he was forced to resign in October 2016. Throughout his employment at Wells Fargo, and pursuant

to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Spelmon was assigned to less favorable territories; denied resources and business opportunities, including lucrative client accounts, inclusion in favorable broker teams and pools, and licensed banker and private banking support on account of his race; and treated worse than similarly situated Wells Fargo employees who are not African American. Spelmon lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

16. Plaintiff Katrina Everett ("Everett") is African American and has been employed by Defendant as a WBS Financial Advisor in a Marietta, Georgia bank location since 2009. Throughout her employment at Wells Fargo, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Everett has been assigned to less favorable territories; denied resources and business opportunities, including lucrative client accounts, inclusion in favorable broker teams and pools, and licensed banker and private banking support on account of her race; and treated worse than similarly situated Wells Fargo employees who are not African American. Everett has lost income and was otherwise harmed as a result of Defendant's unlawful conduct.

## FACTUAL ALLEGATIONS

17. Wells Fargo maintains stereotypical views about the skills, abilities and potential of African Americans that form the basis of the policies and practices challenged by this lawsuit, which result in the segregation and differential treatment of African American Financial Advisors. Wells Fargo maintains race-based attitudes about its clients as well as its Financial Advisors. Wells Fargo's racial bias is illustrated by racial redlining and other discriminatory practices against customers of color, as illustrated in a number of recent lawsuits and settlements. For example, in 2011, a jury found Wells Fargo guilty of systematically discriminating against

6

minority home buyers by making them pay more for their home loans than white borrowers. *Opal Jones, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. BC337821 (Los Angeles Superior Court) ($3.5 million verdict).

18. Wells Fargo has paid hundreds of millions of dollars to avoid litigating its discriminatory practices. Wells Fargo recently agreed to a settlement valued at over $440 million to resolve a lawsuit challenging the Firm's redlining practices that resulted in a disproportionate number of foreclosures in African American neighborhoods in Shelby County and the City of Memphis. *City of Memphis and Shelby County, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 2:09-CV-02857 (W.D. Tenn.). In 2013, Wells Fargo paid $175 million to settle a lawsuit brought by the United States Department of Justice alleging that the Firm charged higher rates to its African American and Latino borrowers. *United States v. Wells Fargo Bank, NA*, Case No. 1:12-cv-01150 (D.D.C.). Wells Fargo also settled a lawsuit for $37 million led by the National Fair Housing Alliance alleging that Wells Fargo took better care of foreclosed properties that it owned in white neighborhoods than those in African American and Latino communities. *National Fair Housing Alliance, et al. v. Wells Fargo Bank N.A., et al.*, HUD Case No. 09-12-0708-8 (U.S. Department of Housing & Urban Development Office of Fair Housing & Equal Opportunity)

19. Unsurprisingly, the Wells Fargo wealth management business unit, too, has been charged with systemic discrimination favoring male Financial Advisors. In 2009, female brokers filed a nationwide sex discrimination lawsuit against Wells Fargo and Wachovia, *Carter et al. v. Wells Fargo Advisors, LLC et al.*, No. 1:09-CV-01752-CKK (D.D.C.), challenging, among other things, Wells Fargo's policy of account distribution and company-approved teaming or "partnership" arrangements. The female advisors alleged that they received lower compensation

than similarly situated male brokers due to discriminatory account distributions and the denial of opportunities to female brokers to join teams. The *Carter* lawsuit was resolved for $32 million in 2010 by a court-approved stipulation of settlement and consent decree. By its express terms, the settlement and consent decree did not address or seek to reform race discrimination against African Americans, and claims of race discrimination were not released by class members.

20. Wells Fargo maintains strict, centralized control over its wealth management business from its company headquarters, where an all-white team of senior executives issues mandatory company policies that apply to all members of the Wells Fargo Financial Advisor and FA Trainee workforce. These include uniform, Firm-wide policies and practices that govern the Wells Fargo FA training program, compensation plans, the formation and treatment of FA teams and pools, the transfer and distribution of client accounts, and the assignment of banking territories.

21. The Financial Advisors who work at Defendant's branch offices across the country advise and service the Firm's clients. Wells Fargo compensates its FAs pursuant to uniform, nationwide compensation plans centrally issued every year. Due to the commission-based and cumulative advantage systems under which FAs and FA Trainees are evaluated and compensated, a level playing field and fair distribution of resources and business opportunities is essential. Defendant's policies and practices, however, do not create an equal playing field for African Americans but result in significant racial disparities in compensation and attrition. These racial disparities are driven in large part by Defendant's discriminatory policies and practices with regard to the transfer and distribution of client accounts and treatment of Financial Advisor teams or pools, *i.e.* shared accounts and books of business between Financial Advisors.

22. Wells Fargo has designed, implemented, and maintains uniform, company-wide teaming, pooling, account distribution, and territory and resource assignment policies and practices that segregate its workforce and discriminate against African Americans. These policies and practices have a disparate impact on African Americans that is not justified by business necessity.

23. Under Defendant's teaming and pooling policies and practices, Financial Advisors are permitted to form teams with FAs of their choosing and combine their client accounts and books of business, subject to management approval. Wells Fargo encourages FAs to form teams and confers special policy advantages, resources, and benefits on teams and FAs on teams. Team members can receive credit for client accounts and production credits they did not generate, and teams and pools steer client assets and business opportunities to FAs and FA Trainees who would not otherwise receive these assets and opportunities. African American FAs are almost entirely excluded from favorable teams and pools. As a result of racial stereotypes and discrimination, the skills and contributions of African American FAs are not valued, and they are not selected or permitted to join teams and pools as equal partners, to their distinct disadvantage under Defendant's policies.

24. Wells Fargo employs account transfer and distribution policies that disproportionately steer lucrative business opportunities to FAs and Trainees who are not African American. The Financial Advisor Book Reassignment ("FABR") policy discriminates against African American FAs and Trainees by (1) distributing lucrative client accounts to FAs based on membership in teams and pools, from which African Americans are largely excluded, and (2) relying on factors that have a disparate impact on African Americans and disproportionately benefit white FAs, including "by prescribing criteria that favor the already successful – those

who may owe their success to having been invited to join a successful or promising team." *McReynolds v. Merrill Lynch*, 672 F.3d 482, 490 (7th Cir. 2012).

25. The Financial Advisor Succession Program, previously called the "Sunset Program," similarly harms and has a disparate impact on African Americans by excluding them from opportunities to inherit the most lucrative client accounts, those of retiring FAs, and segregates African Americans from the most favorable teams – those designed for purposes of succession planning. Wells Fargo has promulgated policies that encourage FAs to select and team with other FAs with whom to distribute their entire books of business upon retirement. The Firm does not ensure that these teams and the corresponding client account transfers of entire books of business are not racially discriminatory. As a result, African American FAs are shut out of very large client account transfers and then forced to compete with the FAs who inherit these books of business.

26. Wells Fargo's policies and practices for assigning territories harms African Americans as they are disproportionately assigned to less lucrative territories, or bank branches (referred to by Wells Fargo as "stores") and denied access to more affluent territories and business opportunities. Wells Fargo assigns African Americans to territories that are problematic and less productive, and even openly engages in race-matching by assigning African Americans to service stores with a higher population of African American clients. Stores with greater investment opportunities are steered to FAs who are not African American. African American FAs are generally assigned lower-tiered branches and territories with fewer investable assets, thereby limiting their compensation and advancement opportunities.

27. Defendant's policies and practices for assigning licensed bankers and providing private banking support also harm African Americans. Wells Fargo promulgates a "team"

approach to developing bank-based clients but denies African Americans the benefit of these teams and support. A significant portion of the business opportunities of bank-based FAs is derived from referrals from the licensed bankers assigned to the banks in their territories, but African Americans are often assigned territories with no or fewer licensed bankers or licensed bankers who are unsupportive and unqualified. These regions also lack the support of Regional Bank Private Bankers (RBPB). Similarly, African Americans are underrepresented at the Wells Fargo Private Bank, and African Americans are denied support and referrals from private banking, as wells as other banking support and product teams to assist with affluent clients. The impact of this inequitable distribution is fewer referrals and opportunities for African American FAs to generate income. Disparities in compensation and attrition are driven by Wells Fargo's firm-wide discriminatory policies and practices with regard to the assignment of territories, including banking branch coverage, and resources and support to FAs, among other practices.

28. In sum, Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on African Americans. Defendant's systemic discrimination against African Americans includes, but is not limited to, the following practices:

a) Employing firm-wide teaming and pooling policies and practices that disproportionately exclude African Americans from favorable participation in lucrative teams and pools and result in a segregated workforce and substantial racial disparities in earnings and attrition rates;

b) Employing firm-wide account transfer and distribution policies and practices that disproportionately steer lucrative client accounts and other business opportunities to Financial Advisors and Trainees who are not African American;

c) Employing firm-wide "sunset" and other Financial Advisor succession programs that disproportionately exclude African Americans from valuable teams, client accounts and business opportunities;

    d) Employing firm-wide training policies and practices that discriminate against African Americans and rely on factors that disproportionately harm African American Financial Advisor trainees;

    e) Employing firm wide policies and practices that disproportionately assign African Americans to less lucrative territories and bank branches because of their race and racial stereotypes;

    f) Employing firm-wide policies and practices that deny African Americans business opportunities, resources, and support on account of race, including leads, referrals, licensed banking, private banking, management support, and other resources; and

    g) Employing firm-wide compensation policies and practices that disadvantage African Americans.

29. The intentional and disparate impact discrimination described above is ongoing and constitutes a continuing violation of the civil rights laws.

30. The racially discriminatory policies and practices at Wells Fargo are uniform and national in scope. Class members relying on Plaintiffs to protect their rights work or worked at Wells Fargo offices across the country and were harmed by these same policies and practices.

**Plaintiffs Were Injured By Defendants' Unlawful Conduct**

31. Plaintiffs, like other African American FAs and FA trainees, suffered substantial harm as a result of Defendant's unlawful policies and practices and systemic discrimination. Among other things, Plaintiffs were denied membership and the benefits of favorable team or pooling relationships due to their race. Plaintiffs have not received the valuable client account transfers and distributions provided to their colleagues who are not African American under the Firm's FABR, FA Succession Program, and other account transfer and distribution policies and practices. Additionally, Defendant's policies and practices regarding the assignment of banking territory and resources have hindered the ability of Plaintiffs who work as WBS Financial Advisors from developing successful books of businesses and earning income by denying them access to lucrative banking stores, proper support, resources, and business opportunities.

32. Plaintiff Slaughter has also been denied management opportunities as a result of Defendant's discriminatory management grooming, assessment, training, and selection practices, which systematically and disproportionately exclude African Americans from branch management, and most management-feeder positions. Plaintiff Slaughter is a successful, experienced FA and is well-qualified to join management. Wells Fargo recruited Slaughter after a successful career at Merrill Lynch. Slaughter requested but was regularly denied management opportunities. Similarly situated non-African Americans, including those who never expressed interest in management, were selected for management opportunities, management training, management feeder positions, and were assigned to manage Defendant's branch offices.

33. Plaintiff Williams was also harmed by the Firm-wide discriminatory policies and practices governing FA Trainees. Williams was recruited by Wells Fargo as part of its efforts to increase its paltry representation of African Americans but was paid a lower salary than other non-African American Trainees hired in her office, despite holding a Master's in Business Administration degree from the University of Chicago and having extensive, relevant prior work experience. Although Williams was promised mentorship, training, and teaming opportunities that would ensure her success in the FA training program, she was denied these resources and business opportunities on account of her race and instead suffered substantial career losses as a result of her termination.

34. All Plaintiffs lost wages and other benefits, suffered emotional distress and other nonpecuniary losses, and their careers were irreparably injured as a result of Wells Fargo's conduct. Defendant's actions have caused and continue to cause Plaintiffs substantial losses in earnings, management opportunities and other employment benefits, in an amount to be determined by a jury.

## CLASS ALLEGATIONS

35.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Class that Plaintiffs seek to represent are defined as follows:

> All African Americans who are or were employed as Financial Advisors or licensed FA trainees (as those terms are defined above) by Wells Fargo Advisors, LLC, and who worked in retail private client group branch offices or in Wells Fargo Wealth Business Services, or bank brokerage channel, between September 4, 2009 and December 31, 2016.

36.     The class of African American employees and former employees is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

37.     There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation.  Fed. R. Civ. P. 23(a)(2).

38.     The claims alleged by Plaintiffs are typical of the claims of the class members. Fed. R. Civ. P. 23(a)(3).

39.     Plaintiffs will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

40.     The issues of determining liability and equitable relief, among other issues, are appropriate for issue certification under Rule 23(c)(4).

41.     The proposed class also meets the requirements for certification under Rule 23(b)(2) and/or Rule 23(b)(3).  The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I

### RACE DISCRIMINATION IN VIOLATION
### OF 42 U.S.C. SECTION 1981

42. Plaintiffs, on behalf of themselves and those similarly situated, reallege paragraphs 1 through 41 and incorporate them by reference as though fully stated herein as part of Count I of this Third Amended Complaint.

43. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

44. Defendant maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

45. Plaintiffs and all those similarly situated were subjected to and harmed by Defendant's systemic and individual discrimination.

## COUNT II

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e *et seq.*

46. Plaintiffs, on behalf of themselves and those similarly situated, reallege paragraphs 1 through 41 and incorporate them by reference as though fully stated herein as part of Count II of this Third Amended Complaint.

47. Plaintiffs Lance W. Slaughter, Michael Smith, and Erika Williams filed charges of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). Wells

Fargo was placed on notice of the representative allegations contained in this Complaint in the EEOC charges. Plaintiffs Slaughter, Smith, and Williams have received Notices of Right to Sue from the EEOC.

48. Title VII of the Civil Rights of 1964 and amendments thereto make it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms or conditions, or privileges of employment, because of such individual's race, color or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, or national origin.

49. Title VII of the Civil Rights Act of 1964 and amendments thereto also make it unlawful for an employer to acquiesce to or perpetuate customer bias.

50. Through the conduct alleged in this Third Amended Complaint, Wells Fargo violated Title VII of the Civil Rights Act of 1964 and amendments thereto by subjecting Plaintiffs and all others similarly situated to differential treatment and by adopting and maintaining policies and practices that had a disparate impact against African-Americans.

51. Wells Fargo is responsible for the acts and conduct of its managers and knew or should have known of a culture created by its managers and employees that discriminated against and was hostile to African-American employees and clients.

52. On behalf of themselves and the class they seek to present, Plaintiffs request the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court find against Defendant as follows:

a. Certify this case as a class action;

b. Designate Plaintiffs as Class Representatives and designate Plaintiffs' counsel of record as Class Counsel;

c. Declare that Defendant's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. Section 1981 and 42 U.S.C. 2000e *et seq.*;

d. Declare that Wells Fargo engages in a pattern and practice of racial discrimination against African Americans and employs policies and practices that have an unlawful disparate impact on African Americans;

e. Order Plaintiffs and all others similarly situated reinstated to their appropriate positions, promotions and seniority, and otherwise make Plaintiffs whole;

f. Award Plaintiffs and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Wells Fargo's unlawful conduct;

g. Award Plaintiffs and all others similarly situated compensatory and punitive damages;

h. Award Plaintiffs and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

i. Award Plaintiffs and all others similarly situated such other make whole equitable, injunctive, and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs;

j.  Award Plaintiffs and all others similarly situated such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

<div style="margin-left:50%">

Respectfully submitted on behalf of Plaintiffs and those similarly situated,

s/ Linda D. Friedman

STOWELL & FRIEDMAN LTD.

</div>

Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
George S. Robot
STOWELL & FRIEDMAN LTD.
303 W. Madison
Suite 2600
Chicago, Illinois 60606
(312) 431-0888

**CERTIFICATE OF SERVICE**

I, Suzanne E. Bish, at attorney, hereby certify that on December 30, 2016, I filed the foregoing *Third Amended Complaint* via the Court's CM/ECF system, which caused a copy of the same to be served upon all counsel of record via ECF.

s/ Suzanne E. Bish