Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

LANCE W. SLAUGHTER, MICHAEL SMITH,
ERIKA WILLIAMS, LUCIEN PHILIPPE,
KATRINA EVERETT, and KEITH SPELMON, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

    v.

WELLS FARGO ADVISORS, LLC,

        Defendant.

Case No. 13-cv-06368

Judge Harry D. Leinenweber

## <u>AMENDED SETTLEMENT AGREEMENT</u>

I.      INTRODUCTION..................................................................................................... 1

II.     NATURE AND RESOLUTION OF THE CASE............................................................. 1

III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT ....................................... 5

      A.     Definitions................................................................................................ 5

      B.     Duration of the Settlement ..................................................................... 11

      C.     Cooperation............................................................................................ 11

      D.     Persons Covered by this Settlement Agreement ................................... 12

IV.    COURT APPROVAL/NOTICE AND FAIRNESS HEARING ..................................... 12

      A.     Jurisdiction............................................................................................ 12

      B.     Preliminary Approval............................................................................. 12

      C.     Notice .................................................................................................... 13

      D.     Objections .............................................................................................. 15

      E.     Exclusions / Opt Outs ............................................................................ 16

      F.     Fairness Hearing .................................................................................... 17

      G.     Defendant's Right To Withdraw Or Modify The Settlement Agreement............ 18

V.      RELEASE/BAR OF CLAIMS................................................................................. 19

VI.     NO ADMISSION, NO DETERMINATION ............................................................. 20

VII.    PROGRAMMATIC RELIEF.................................................................................... 22

      A.     Duration of the Settlement ..................................................................... 22

      B.     No Mandatory Arbitration or Class Waivers of Race Discrimination and Race-Related Retaliation Claims ................................................................................... 22

      C.     Elimination of PCG FA Training Costs Obligations ........................................... 23

      D.     Recruiting............................................................................................... 23

      E.     FA Coaches ............................................................................................ 23

      F.     Leadership Teams .................................................................................. 23

      G.     Focus Groups ......................................................................................... 25

      H.     Business Development Fund.................................................................... 26

      I.      Teaming ................................................................................................. 26

      J.     New Manager Selection ......................................................................... 27

      K.     Assignment of WBS FAs to Banking Stores ...................................... 27

      L.     General Non-Discrimination Provisions................................................ 28

      M.    Monitoring and Reporting...................................................................... 29

VIII.  MONETARY RELIEF...................................................................................... 29

    A.  Settlement Fund ............................................................................... 29

    B.  Administration of Settlement Fund by Trustees .................................... 31

    C.  Claims Filing and Resolution Procedures for Monetary Awards to Named
        Plaintiffs and Settlement Class Members ........................................... 31

    D.  Distribution of Individual Monetary Awards....................................... 37

    E.  Non-Admissibility of Fact of Monetary Award (or Non-Award)...................... 38

    F.  Confidentiality Regarding Amount of Monetary Award. .................................. 38

    G.  Tax Treatment .................................................................................. 38

    H.  Defendant Has No Further Obligation, Liability or Responsibility ................... 41

IX.  ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL AND SERVICE
     AWARDS TO NAMED PLAINTIFFS ................................................................ 41

X.  ENFORCEMENT AND DISPUTE RESOLUTION MECHANISMS ........................... 42

XI.  CONFIDENTIALITY ......................................................................................... 42

    A.  Public Comment ............................................................................... 42

    B.  Documents and Information Produced by Defendant and Class Counsel .......... 42

    C.  Return or Disposal of Confidential Documents and Information. ...................... 43

XII.  OTHER TERMS AND CONDITIONS OF SETTLEMENT ......................................... 44

    A.  Governing Law ................................................................................. 44

    B.  Entire Agreement ............................................................................. 44

    C.  Modifications .................................................................................... 45

    D.  Exhibits ........................................................................................... 45

    E.  Notices to Counsel ............................................................................ 45

    F.  Failure to Insist on Strict Compliance.................................................. 45

    G.  Settlement Agreement Binding............................................................ 45

    H.  No Drafting Presumption ................................................................... 45

    I.  Dispute As To Meaning of Agreement Terms....................................... 46

    J.  Interpretation of Terms ..................................................................... 46

    K.  Paragraph and Section Headings......................................................... 46

    L.  Counterparts .................................................................................... 46

    M.  Agreement Binding ........................................................................... 46

    N.  Parties' Authority ............................................................................. 46

I.    INTRODUCTION

Subject to approval by the Court, this Amended Settlement Agreement ("Settlement Agreement") sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and a Settlement Class of African Americans who are or were employed as Financial Advisors and licensed Financial Advisor Trainees by Wells Fargo Advisors, LLC ("WFA" or "Defendant") in either the Private Client Group ("Private Client Group" or "PCG") or WFA's bank brokerage channel ("Wealth Brokerage Services" or "WBS") at any time between September 4, 2009 and December 31, 2016, and Defendant (collectively, the "Parties") have settled and resolved all race discrimination claims raised in the Civil Action captioned *Slaughter, et al. v. Wells Fargo Advisors, LLC*, Case No. 13-cv-06368, pending in the United States District Court for the Northern District of Illinois (the "Court") before District Judge Harry D. Leinenweber.

II.   NATURE AND RESOLUTION OF THE CASE

A.    In 2013, Named Plaintiff Lance Slaughter, an African American Financial Advisor employed by WFA, retained Class Counsel to represent him with respect to his claims of race discrimination in employment against African Americans.  On September 5, 2013, Slaughter filed the Complaint in the Court to initiate a putative class action on behalf of himself and a nationwide class of African American Financial Advisors ("FAs") and FA Trainees against the Defendant pursuant to 42 U.S.C. § 1981.  This Action alleged that African American FAs and FA Trainees at WFA had been and were being denied business opportunities and excluded from favorable teams, among other things, because of their race and had experienced race discrimination in other terms and conditions of their employment.

B.    On January 8, 2014, the Court granted Plaintiff leave to file an amended

complaint. Dkt. 22.

C.      On February 10, 2014, the Complaint was amended (the "Amended Complaint"), with leave of Court, to add Named Plaintiffs and Putative Class Representatives Erika Williams and Michael Smith. Dkt. 23.

D.      On March 10, 2014, Defendant filed an Answer to the Amended Complaint. Dkt. 24. On March 28, 2014, Defendant filed an Amended Answer to the Amended Complaint, denying the allegations in the Amended Complaint, and specifically denying that it engaged in unlawful race discrimination against the Named Plaintiffs or any similarly situated current and former African American FAs and FA Trainees. Dkt. 30. Defendant also denied any liability under Section 1981 or any other federal, state, or local laws, and specifically denied that Plaintiffs or Class Members were entitled to any relief requested.

E.      On April 7, 2014, WFA filed a Motion to Compel the Individual Arbitration of Plaintiffs Michael Smith and Erika Williams' Claims. Dkt. 31. On June 9, 2014, Plaintiffs moved to strike Defendant's Motion to Compel Arbitration. Dkt. 43. Both Parties' motions were fully briefed by July 31, 2014. After hearing oral argument on both motions, on August 12, 2014, the Court denied Defendant's motion to compel individual arbitration without prejudice to reinstate in the event that class certification was denied. Dkt. 53.

F.      On September 9, 2014, Defendant filed a notice of appeal of the Court's August 12, 2014 order refusing to compel individual arbitration, and also moved to stay discovery pending its appeal. Dkt. 58, 60. On September 11, 2014, the Court denied Defendant's motion to stay and ordered that discovery proceed. Dkt. 65. Plaintiffs had previously served requests for the production of documents and data and notices of depositions of corporate representatives on a number of topics.

G.      After the Named Plaintiffs had exhausted their administrative remedies and the United States Equal Employment Opportunity Commission ("EEOC") issued right to sue notices, Plaintiffs received leave to amend the Amended Complaint and filed the Second Amended Complaint on January 27, 2015 to add claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII"). Defendant denied and continues to deny Plaintiffs' allegations in the Second Amended Complaint that it violated Section 1981, Title VII, or any other federal, state, or local laws, and specifically denied and continues to deny that it engaged in any unlawful race discrimination against any of the Named Plaintiffs or any similarly situated current and former African American FAs and FA Trainees. Defendant denied and continues to deny that Plaintiffs or Class Members are entitled to any relief requested.

H.      On March 3, 2015, the Court entered a stay of the proceedings so that the parties could explore the possibility of an out-of-court resolution. Dkt. 77.

I.      In an effort to determine whether the Parties could settle this dispute prior to a lengthy class certification and appeal process, the Parties' counsel, who are experienced class action attorneys, participated in detailed and exhaustive discussions. As part of their investigation, Class Counsel interviewed Financial Advisors who worked at WFA as PCG and WBS FAs. Through these interviews, Class Counsel discovered that some African American PCG and WBS FAs believed that they had experienced similar policies and practices of systemic race discrimination in their employment. Defendant's investigation led it to believe that its policies did not cause or result in discrimination and that there is not any basis or support for Plaintiffs' allegations of systemic race discrimination. The Parties discussed and negotiated the claims of both PCG and WBS FAs and FA Trainees during the course of their negotiations. PCG and WBS FAs participated in the mediations and negotiations.

J.     The Parties engaged the services of Linda Singer, a highly experienced professional mediator, skilled in mediation of complex class actions, including employment discrimination litigation, and the Honorable David H. Coar, a former federal judge who currently serves as an arbitrator and mediator at JAMS.  Ms. Singer became familiar with the case and conducted more than four mediation sessions in Washington, DC.  After these mediation sessions were unsuccessful, the Parties then retained Judge Coar and participated in two additional days of mediation sessions with Judge Coar in Chicago, Illinois.  The formal mediation sessions and follow-up settlement discussions between the Parties culminated in the execution of this Settlement Agreement.  During the negotiations, counsel bargained vigorously on behalf of their clients.  All negotiations were conducted at arm's length and in good faith.

K.     For settlement purposes, Class Counsel sought, and Defendant produced to Class Counsel, voluminous employment workforce and client account data, relevant employment policies, and related documents concerning the Financial Advisor workforce and work practices relevant to the claims asserted and damages sought by Plaintiffs and the Class.  Class Counsel interviewed numerous Class Members across the United States during the course of their investigation and retained an expert in labor economics and statistics to conduct statistical analyses of the data.  The expert worked with Class Counsel to review the data, ensure it was complete, request supplemental data, and analyze the data.  The expert also conducted studies similar to those he would have conducted in preparation for a trial of this matter.

L.     Counsel for the Parties conducted their own substantial investigations of the matter, including the facts underlying the claims and issues raised in the charges and the Complaint.  The investigations included, among other things, interviewing class member witnesses and reviewing a substantial number of relevant company records.  As a result of the

exchange of information, the investigation, and other activity both prior to and after filing the Complaint, counsel for the Parties are familiar with the strengths and weaknesses of their respective positions, and have had a full opportunity to assess the litigation risks presented in this case.

M.      All Parties and their counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including motions for class certification, potential interlocutory appeal of the class certification decision, formal discovery, motions for summary judgment, completion of the pending Seventh Circuit appeal, trial, and potential appellate proceedings that would consume time and resources and present each party with ongoing litigation risks and uncertainties.  The Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, and have decided that an amicable settlement pursuant to the terms and conditions of this Settlement Agreement is more beneficial to them than continued litigation.  Class Counsel believe that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate.

N.      Defendant denies each and every claim as to wrongdoing, liability, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as each and every class allegation asserted in the Action.  Without any admission or concession by Defendant of any liability or wrongdoing with respect to the allegations in any administrative charge or in the Second Amended Complaint, all Released Claims shall be finally and fully compromised, settled, and released, subject to the terms and conditions of this Settlement Agreement, which were the product of vigorous, arm's-length negotiation by the Parties.

III.    <u>GENERAL TERMS OF THE SETTLEMENT AGREEMENT</u>

A.      <u>Definitions</u>.  In addition to terms identified and defined elsewhere in this

Settlement Agreement, and as used in this Settlement Agreement, the terms listed below shall have the following meanings:

1. "Action" means the civil action captioned *Slaughter, et al. v. Wells Fargo Advisors, LLC*, Case No. 1:13-cv-06368, pending in the United States District Court for the Northern District of Illinois (the "Court") before District Judge Harry D. Leinenweber, and the allegations contained in the Complaint filed on September 5, 2013 in the Action and all amendments thereto.

2. "Amended Complaint" means the complaint filed on February 10, 2014.

3. "Claimants" means Settlement Class Members who have submitted a timely Claim Form.

4. "Claim Form" means the form to be submitted by eligible Class Members and as agreed to by the Parties.

5. "Claims Administrator" means KCC Class Action Services, LLC (or an alternate company mutually agreeable to the Parties), which has been jointly designated by counsel for the Parties to fulfill the duties set forth herein, including to serve Notice, maintain a website accessible to Class Members as described in Section IV.C.1 below, and administer aspects of the Claims Resolution Process and Settlement Fund pursuant to Section IV.C.1 below and related orders of the Court.

6. "Class" means the class that the Plaintiffs seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all African Americans who are or were employed as Financial Advisors and licensed Financial Advisor Trainees (as those terms are defined below) by WFA, and who worked in the United States in the Private Client Group ("PCG") or in the WFA bank brokerage channel ("Wealth Brokerage Services" or "WBS") at

any time between September 4, 2009 and December 31, 2016.

7.      "Class Counsel" means the law firm of Stowell & Friedman, Ltd.

8.      "Class Member" means any person who meets the criteria set forth in the definition of "Class" above.

9.      "Class Member Release" means the release of claims described in the Released Claims set forth in Section III.A.30 below applicable to those Settlement Class Members who are not Named Plaintiffs as referenced in Section V.

10.     "Company" means Wells Fargo Advisors, LLC.

11.     "Complaint" means the Complaint filed in this Action on September 5, 2013.

12.     "Court" means the United States District Court for the Northern District of Illinois.

13.     "Defendant" means defendant Wells Fargo Advisors, LLC.

14.     "Defendant's Counsel" means the law firm of Morgan, Lewis & Bockius LLP and in-house counsel for Defendant.

15.     "Depository Bank" means Branch Bank & Trust ("BB&T") or another bank selected by Class Counsel to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Claims Administrator.

16.     "Effective Date" means the date on which all of the following have occurred:  (1) the Court has finally approved and entered this Settlement Agreement; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*,

petitions for certiorari or appellate review) has been finally resolved.

17.     "Fairness Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

18.     "Final Approval" means the date on which the Court grants final approval of the Settlement.

19.     "Financial Advisor" or "FA" means a person who is or was employed as a financial advisor by WFA in the PCG or WBS business units.

20.     "Financial Advisor Trainee" or "FA Trainee" means a person who is or was employed in a FA Trainee position by WFA in the PCG or WBS business units and who passed the Series 7 examination.

21.     "Monetary Award" means the individual monetary awards determined by the Special Master for eligible Claimants and Named Plaintiffs as described in Section VIII.C below.

22.     "Named Plaintiff Release" means the General Release Agreement in the form, attached hereto as Exhibit C, agreed to by counsel for the parties with respect to the Named Plaintiffs as referenced in Section V.

23.     "Notice" means the Notice of Class Action, Proposed Settlement Agreement, and Fairness Hearing, which the Claims Administrator will mail directly to Class Members and potential Class Members substantially in the forms attached hereto as Exhibits A and B, respectively.

24.     "Notice of Award" means the letter sent to each eligible Claimant specifying the amount of that Claimant's award, as determined by the Special Master.

25.     "Parties" means Plaintiffs, Defendant, and Class Members.

26.	"Plaintiffs" or "Named Plaintiffs" means Lance Slaughter, Erika Williams, Michael Smith, Katrina Everett, Lucien Philippe, and Keith Spelmon.

27.	"Preliminary Approval" means the order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

28.	"Private Client Group" or "PCG" means Defendant's private client group business unit.

29.	"Programmatic Relief" means the non-monetary terms of the Settlement Agreement described in Section VII.

30.	"Released Claims" means any and all claims of race discrimination arising out of the Named Plaintiffs' and/or Class Members' employment with Defendant, known or unknown, that the Named Plaintiffs and Class Members may have against Defendant, its parent, subsidiaries and affiliated companies, and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, insurers, predecessors, successors and assigns (collectively referred to as the "Released Parties"), arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action or by the subclass of African American FA Trainees referenced in paragraph 20 of the Complaint filed in the matter of *Erika Williams v. Wells Fargo Advisors, LLC*, No. 14-cv-01981 in the United States District Court for the Northern District of Illinois ("Williams Race Claims"), including any and all claims asserted in the original and subsequently amended complaints filed in the Action and the Williams Race Claims.  This release does not include or cover any actions or omissions occurring after the Preliminary Approval Date as defined.  Specifically included in

this release are any and all race discrimination claims arising out of the Named Plaintiffs' and/or Class Members' employment with Defendant, the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action, including but not limited to, claims of alleged racial employment discrimination or benefits claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and any other federal, state, or local statute, common law, or regulation. Furthermore, the Released Claims include all claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981 or under any other federal, state, local or common laws or regulations arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the race discrimination claims that were or could have been asserted in this Action or the Williams Race Claims.

31.	"Second Amended Complaint" means the complaint filed on January 27, 2015.

32.	"Service Award" means the proposed awards for Named Plaintiffs for their service to the Settlement Class, as described in Section IX.

33.	"Settlement," "Agreement," and "Settlement Agreement" each mean the settlement as reflected in this Settlement Agreement.

34.	"Settlement Class" means the Class as defined above excluding any Class Member who files and serves a timely opt out statement that is not subsequently rescinded within the allotted time period for revocation.

35.	"Settlement Class Member" means any person who meets the criteria set

10

forth in the definition of "Settlement Class."

36.    "Settlement Fund" or "Fund" means the thirty five million five hundred thousand dollars and no cents ($35,500,000.00) to be transferred by Defendant to the Depository Bank pursuant to Section VIII of this Settlement Agreement, including any interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

37.    "Special Master" means the individual appointed by the Court under Rule 53 of the Federal Rules of Civil Procedure to perform certain duties in connection with this Settlement Agreement as described in Section VIII below.

38.    "Third Amended Complaint" means the complaint filed on December 30, 2016.

39.    "Wealth Brokerage Services" or "WBS" means Defendant's bank brokerage channel.

B.    Duration of the Settlement.  The Programmatic Relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the Parties and their agents and successors for a four-year period following the Effective Date.

C.    Cooperation.  The Parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.  The Parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but are not obligated to accept any changes in the monetary amount of relief or material change in the substantive Programmatic Relief provided for herein, or any other material substantive change.

D.    Persons Covered by this Settlement Agreement.

1.    Definition of "Class."  Solely for purposes of Settlement and judicial approval of this Settlement Agreement, the Plaintiffs seek to certify the following Class:

> All African Americans who are or were employed as Financial
> Advisors or licensed FA Trainees (as those terms are defined
> above) by Wells Fargo Advisors, LLC, and who worked in the
> United States in the Private Client Group ("PCG") or in the WFA
> bank brokerage channel ("Wealth Brokerage Services" or "WBS")
> at any time between September 4, 2009 and December 31, 2016.

2.    Certification.  Plaintiffs will request that the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).  Defendant will not oppose Plaintiffs' request to certify the Class for settlement purposes.

IV.    COURT APPROVAL/NOTICE AND FAIRNESS HEARING

A.    Jurisdiction.

1.    The Parties agree that the Court has jurisdiction over the Parties and the subject matter of this Action.  The Court shall retain jurisdiction of this Action for four years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein.

B.    Preliminary Approval.

1.    Prior to execution of this Settlement Agreement, the Parties have agreed upon written Notices of this Settlement Agreement to be sent to Class Members and potential Class Members, subject to Court approval.

2.    Within ten (10) days after the execution of this Settlement Agreement, Plaintiffs shall file an unopposed motion with the Court for an order preliminarily certifying the Class; preliminarily approving this Settlement Agreement; approving the Notice to be sent to

Class Members and potential Class Members describing the terms of the Settlement and informing them of their rights to submit objections and to opt out; and preliminarily enjoining, pending the outcome of the Fairness Hearing, (i) all Class Members from commencing, prosecuting or maintaining any claim already asserted in, or encompassed by, this Action, and (ii) all Class Members (including those who request exclusion) from commencing, prosecuting, pursuing or maintaining in any court or forum other than the Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of the Court in connection with this Settlement Agreement or otherwise in connection with this Action.

      C.    <u>Notice</u>.

      1.    The Court will appoint KCC (or an alternate company mutually agreeable to the Parties) as the Claims Administrator to perform the following tasks, among others:

    (a)    Distribute Preliminary and Final Notice to Class Members;

    (b)    Receive and forward to Class Counsel and Defendant any Objections or Opt-Out Statements from Class Members;

    (c)    Maintain a website on which the Settlement Agreement, Class Notices, blank Claim Forms, related Court Orders, and other documents and content approved by Counsel for the Parties for posting on this website are available to Class Members, and a secure portal through which Settlement Class Members, following Final Approval of the Settlement, can electronically submit Claim Forms and other documents in a confidential and private manner;

    (d)    Distribute and receive Claim Forms in a confidential manner and other documents, including correspondence with and from the Special Master; and

    (e)    Properly process monetary awards, including for tax purposes as directed in Section VIII.C below.

      2.    Defendant will identify all Class Members and will provide to the Claims Administrator in electronic format, within fifteen (15) business days after Preliminary Approval

of this Settlement Agreement, the name, relevant personnel information, social security number, and last known address of each Class Member.  The Claims Administrator shall utilize Class Members' social security numbers only for the purpose of locating and identifying Class Members and shall otherwise keep confidential and shall not disclose the contact information and social security numbers to any other person or entity, including Class Counsel, except that Class Counsel will be provided with complete copies of all Claim Forms submitted by Settlement Class Members, *see* Section VIII.C.

3.      Within ten (10) days after receiving the Class Member information from Defendant, the Claims Administrator will mail the Notice to each Class Member and potential Class Member in the form agreed upon by Counsel for the Parties or such other form as approved by the Court.

4.      If Final Approval is granted, the Claims Administrator shall mail a Claim Form to each Class Member at the same time the Final Notice is sent and make the Claim Form available electronically on a website accessible to Class Members maintained by the Claims Administrator.  Settlement Class Members will be able to view and access their individual Claim Forms electronically on the website maintained by the Claims Administrator and may submit them through a secure, non-public portal in a confidential and private manner.

5.      In order to provide the best notice practicable, before mailing the Notice and Claim Form, the Claims Administrator will run the list of all Class Members through the United States Postal Service's National Change of Address database ("NCOA").

6.      If envelopes from the mailing of the Notice and Claim Form are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Form to the new address within three (3) business days.

7.      In the event that a Notice and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace in an effort to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Class Member, the Notice and Claim Form shall be sent again to the Class Member's last known address.  In either event, the duty of the Parties and Claims Administrator to deliver the Notice and Claim Form shall be deemed satisfied once it is mailed for the second time.

8.      The Claims Administrator shall provide to Class Counsel a list of the names of those Class Members who have not been located, and the Claims Administrator may engage third party vendors in order to locate Class Members.

9.      If the Court approves the Settlement at the Fairness Hearing, the Claims Administrator shall mail the Notice of Final Approval of Settlement Agreement within 10 business days of the conclusion of the Fairness Hearing to each Settlement Class Member who did not opt out of the class.

10.      The Claims Administrator will maintain a log of all of its activities undertaken pursuant to this Section IV.C.

D.      Objections.

1.      Class Member objections to this Settlement Agreement must be submitted in writing, signed, filed with the Court (with copies served on the Parties' counsel), must include a detailed description of the basis of the objection, and indicate whether the Settlement Class

Member intends to appear at the Fairness Hearing. To be timely and considered by the Court, objections must be filed and postmarked within forty-five (45) days after Notice is mailed to Class Members.

2. The Claims Administrator shall provide counsel for both parties all objections it receives from Class Members.

3. Only Settlement Class Members who timely file their signed, written objections and state in writing their intent to appear at the Fairness hearing may appear at the Fairness Hearing. No one may appear at the Fairness Hearing for the purpose of objecting to the Settlement Agreement without first having served their objection(s) in writing within forty-five (45) days after the Notice was mailed to Class Members.

4. Within sixty (60) days after the Notice is mailed to Class Members, Class Counsel will file with the Court all timely filed objections.

E. <u>Exclusions / Opt Outs.</u>

1. Any Class Member who wishes to opt out of the Class must mail to the Claims Administrator a written, signed statement that they are opting out. Opt-out statements must be postmarked within forty-five (45) days after Notice is mailed to Class Members. Class Counsel shall file with the Court all timely opt-out statements. The Settlement Class will not include those individuals who timely submitted an opt-out statement, and individuals who opt out are not entitled to any Monetary Award under this Settlement Agreement. The Notice mentioned above shall include the following language: "Any Settlement Class Member who wishes to opt out must mail a written, signed statement that he/she is opting out of the Settlement to the Claims Administrator, at the address listed above. To be effective, this opt out statement must be postmarked on or before [forty-five (45) days after the Notice is scheduled to be mailed

to Class Members]." To be effective, the opt-out letter and statement must include the language specified in the Notice confirming that the individual is aware that by opting out he or she will forego the opportunity to receive monetary benefits from this Settlement. Class Members who have timely and properly opted out of the Settlement Class as set forth in this Paragraph may not participate in the Fairness Hearing. The Claims Administrator shall determine whether a Class Member has timely and properly opted out of the Settlement Class.

2.      Class Members who file opt-outs may rescind their opt-outs. To be effective, such rescissions must be in writing and must be received by the Claims Administrator at least one day before the Fairness Hearing.

F.      Fairness Hearing.

1.      Upon Preliminary Approval, a briefing schedule and Fairness Hearing date will be set at the Court's convenience. The Plaintiffs' Motion for Final Approval and for Certification of the Class will be due no earlier than fifteen (15) days following the close of the objection and opt-out period, and the Fairness Hearing will be held no earlier than thirty (30) days following the close of the objection and opt-out period. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof shall be admissible in any court regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement).

2.      The time periods referenced in this Section IV are guidelines; actual dates will be inserted in the Preliminary Approval Order by the Court.

3.      In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class

certification, and claims and defenses on the merits.  Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

4.      If this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or if, following approval by this Court, such approval is reversed or substantively modified), the Parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose; the Settlement Fund shall be returned to Defendant, including any interest earned by the Settlement Fund through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Claims Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no Settlement Agreement, with no stipulated Class.  The Parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in this Action.  This Settlement Agreement will not be considered an admission of liability or damages by Defendant or represent a cap on damages available to the Named Plaintiffs or the Class.

G.      Defendant's Right To Withdraw Or Modify The Settlement Agreement.

1.      If the number of Class Members who have duly requested exclusion from the Class in the manner provided in the Court's Preliminary Approval order equals or exceeds the termination-threshold number set forth in Appendix 1 filed with the Court under seal

concurrently with this Settlement Agreement, Defendants shall have the right, for thirty (30) days after the deadline for Class Members to opt out, to withdraw from and fully terminate this Settlement Agreement pursuant to Section IV.F.4 of this Settlement Agreement by providing written notice to Class Counsel and the Court.

2.      The Claims Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest, but after deducting all costs and expenses paid or incurred by the Claims Administrator as of the date of withdrawal, including costs of providing Notice to Class Members) to Defendant within five (5) business days in the event that Defendant withdraws from this Settlement Agreement, or in the event that this Settlement Agreement is modified or reversed on appeal or is otherwise rendered null and void for any reason.

V.      RELEASE/BAR OF CLAIMS

A.      All Settlement Class Members who do not timely opt out of this Settlement will irrevocably and forever release all Released Claims as defined in Section III.A.30 above.

B.      All Named Plaintiffs, as a condition of receiving a service award in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator a Named Plaintiff Release in the form agreed to by counsel for the parties and attached hereto as Exhibit C.  The Named Plaintiff Release is more expansive than the limited Class Member Release.  It releases all of the Named Plaintiffs' individual claims and is a general release of all claims of any nature against Defendants under federal, state, and local laws for any period up through the date that Notice is mailed to the Class.

C.      The Claims Administrator shall provide all Named Plaintiffs with the Named Plaintiff Release at the time the Notice is provided to them.

D.     The terms of the Releases, set forth in Section III.A.30 above for Settlement Class Members and in Exhibit C for the Named Plaintiffs, are a material part of this Settlement Agreement and are hereby incorporated as if fully set forth in the Settlement Agreement; if these Releases, set forth in Section III.A.30 above for Settlement Class Members and in Exhibit C for the Named Plaintiffs, are not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Section IV.F.4 of this Settlement Agreement, then the Releases shall terminate *nunc pro tunc* and be of no force and effect.

E.     Any Named Plaintiff who does not execute and timely deliver a Named Plaintiff Release shall be ineligible for, and forever barred from receiving a service award under this Settlement Agreement, even if said Named Plaintiff has not opted out.  Class Members who neither timely opt out nor timely file a Claim Form shall, upon the Effective Date, be deemed to have fully, finally and irrevocably waived, released and discharged Defendant from the Released Claims.

VI.     NO ADMISSION, NO DETERMINATION

A.     Defendant denies all claims as to wrongdoing, liability, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class allegations asserted in the Action.  Defendant has agreed to resolve the Action via this Settlement Agreement, but to the extent this Settlement Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Named Plaintiffs in the Action upon all procedural and substantive grounds, including without limitation the ability to challenge class action treatment on any grounds and to assert any and all other potential defenses or privileges.

The Named Plaintiffs and Class Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary. The Named Plaintiffs and Class Counsel agree that, if the Action were to proceed, they would not argue or present any argument, and hereby waive any argument, based on this settlement or this Settlement Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Settlement Agreement, that Defendant should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23, or from asserting any and all other potential defenses and privileges. This Settlement Agreement shall not be deemed an admission by, or a basis for estoppel against, Defendant that class action treatment pursuant to Federal Rule of Civil Procedure 23 in the Action is proper or cannot be contested on any grounds.

B.      This Settlement Agreement does not and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims or defenses of any party in this case. The Class Members continue to assert the merits and validity of their claims under 42 U.S.C. Section 1981, Title VII, or parallel state and local laws prohibiting race discrimination. By entering into this Agreement, Defendant does not admit or concede, expressly or impliedly, but continues to deny that it has in any way violated 42 U.S.C. Section 1981, Title VII, parallel state and local laws prohibiting race discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy, or lack thereof, of any of the claims in this case.

C.      Nothing in this Settlement Agreement, nor any action taken in implementation

thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the Parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible as evidence in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the results of the Claims Process established under this Settlement Agreement) as evidence of discrimination, retaliation or harassment or as evidence of any violation of 42 U.S.C. Section 1981, Title VII, parallel state and local laws prohibiting race discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered in connection herewith.

VII.    PROGRAMMATIC RELIEF

    A.    <u>Duration of the Settlement</u>.  The Programmatic Relief embodied in this Settlement Agreement shall remain binding on the Parties and their agents and successors for four (4) years following the Effective Date (the "Programmatic Relief Period").  Unless specified otherwise, the Programmatic Relief identified herein is applicable to both PCG and WBS.

    B.    <u>No Mandatory Arbitration or Class Waivers of Race Discrimination and Race-Related Retaliation Claims</u>.  WFA agrees that it will not take any action seeking to enforce class action waivers or mandatory arbitration agreements with respect to race discrimination or race-related retaliation claims of African American Financial Advisors or FA Trainees during the four years of the Programmatic Relief Period.

C.      Elimination of PCG FA Training Costs Obligations.  WFA will end the practice of seeking to obligate "New Financial Advisors" or FA Trainees for reimbursement of any cost of their training, the practice challenged, among other things, in the lawsuit *Williams v. Wells Fargo Advisors, LLC*, Case No. 14-cv-01981 (N.D. Ill.).  WFA will end any collection efforts of such training costs.

D.      Recruiting.

1.      WFA agrees to have a resource whose primary responsibility will be the recruitment of African American FAs and FA Trainees.  Results of the recruiting resource will be reported to the Leadership Councils.

2.      Upon request, WFA will give FA recruits the opportunity to speak with a current African American FA.

E.      FA Coaches.

1.      WFA will create two Coach positions whose primary responsibility will be to work with African American FAs and FA Trainees, to assist such FAs and FA trainees in the areas of networking and building relationships, forming or joining teams, territory assignments, maximizing resources to help increase productivity, and business and career development.

2.      The Coaches will be appointed within three months of the Final Approval date.

3.      The Coaches will periodically provide feedback to the Leadership Teams established pursuant to Section F of this Section.

F.      Leadership Teams.

1.      Composition.  Within three months of the Final Approval Date, WFA will create a PCG Leadership Team and a WBS Leadership Team.  Each team will be comprised of

Senior Business Leaders within the respective business channel, including African American leaders.

        2.        <u>Purpose.</u>  The Leadership Teams will meet at least semi-annually to review data and analysis regarding FA diversity efforts, progress and results.  The Leadership Teams will explore ideas and initiatives designed with the objective of increasing the number of African American FAs and increasing African American productivity, retention and opportunities for teaming, and the assignment of store locations for WBS.  The Leadership Teams will receive input and feedback from the respective Focus Groups as described in Section VII.H below, and the Coaches as described in Section VII.E above.

        3.        <u>Resources</u>.  The Leadership Teams will receive information and reports as needed, reflecting FA representation, recruiting and hiring of experienced FAs (including transitional compensation), recruiting and hiring of inexperienced FAs or FA Trainees, attrition, productivity, participation in teams, assignments to particular stores for WBS FAs, utilization of the Business Development Fund, and results from the Branch Manager Assessment Center.  All metrics provided to the Leadership Teams will include racial data for the FAs.  The Leadership Teams may request additional information helpful to perform its function.

        4.        <u>Consultant</u>.  The parties jointly selected Professor Frank Dobbin to serve as a scholar/consultant on workplace diversity. The parties have agreed to engage Professor Dobbin to provide the following services:

        (a)      Professor Dobbin will provide a presentation to the Leadership Teams on successful diversity programs based on his research and scholarly work in the field;

        (b)      The Leadership Teams shall identify additional audiences who would benefit from Professor Dobbin's diversity presentation, and those additional groups shall

attend a diversity presentation;

(c)     If, during the programmatic relief period, Professor Dobbin updates his research and/or develops additional scholarly work relating to successful corporate diversity programs, he shall be available to provide the Leadership Teams with an updated presentation upon request; and

(d)     Professor Dobbin shall remain available throughout the Programmatic Relief Period to provide additional advice and consultation as WFA may request.

5.     In the event that Professor Dobbin is not available to serve as a diversity consultant, the parties shall jointly select another scholar/consultant for this role.

6.     <u>Privileged & Confidential Reports</u>.  The reports will be created to allow WFA to comply with its obligations under this Settlement Agreement in connection with the parties' underlying litigation.  Reports prepared and reviewed by the Leadership Teams shall be considered privileged & confidential and attorney-client privileged and shall be protected from disclosure to the fullest extent permissible.

G.     <u>Focus Groups</u>.

1.     Within three months of the Final Approval Date, WFA will establish a PCG Focus Group and a WBS Focus Group consisting of African American FAs and Trainees who shall meet at least semi-annually for the purpose of providing feedback to and dialogue with the Leadership Teams in the areas described in Section VII.F above.  Each Focus Group will have no more than 15 members, with a cross section of length of service, production, and geographic location. FAs who will serve as members of the Focus Groups will be selected by WFA senior management, including 3 or a maximum of 20% of the total members who will be selected by a random selection process.  During the Settlement period, the Focus Group will

include at least one of the Named Plaintiffs currently employed as a WFA Financial Advisor, to the extent that at least one of the Named Plaintiffs remains employed by WFA as a Financial Advisor during the Programmatic Relief Period.

H.    Business Development Fund.

1.    WFA will establish a Business Development Fund that will be available to African American PCG and WBS FAs ("Eligible FAs") to fund business development events or activities.  WFA will determine the annual amount of the Business Development Fund, which shall be no more than five hundred thousand dollars ($500,000) in the aggregate over the Programmatic Relief Period.  WFA will establish reasonable criteria for what constitutes qualifying business development activities and when and how Business Development Funds may be used.  Such criteria and business rules will be established and available through the Coaches within 3 months of the Final Order. Any funds not used in a fund year are forfeited and revert back to WFA.

2.    Eligible FAs will submit business development proposals to their managers, who, working with the Coaches, will determine whether the proposal satisfies the established criteria for the use of the Business Development Fund and facilitate distribution of monies from the Business Development Fund.

I.    Teaming.

1.    Teaming EEO Policy.  WFA will encourage diverse teams and will inform FAs that the decision to team or not to team with particular FAs or FA Trainees may not be made on the basis of the individual's gender, race, national origin, religion, age, sexual orientation or gender identity, disability, marital status, veteran status, or any other legally protected characteristics.

2.  Team Candidate Database.  WFA will develop and maintain a database or system that stores business profile information for FAs and FA Trainees who are interested in joining or forming a Team.  Participation in the database will be optional for FAs and FA Trainees who are interested in teaming.  The Team Database may also be utilized by the FA Teaming and Succession Planning group (or its equivalent) within each channel to help facilitate teaming discussions and opportunities.  Information from the Team Database will be available to the Leadership Teams.

J.  New Manager Selection.

1.  Posting.  Senior Management job opportunities will be posted on the Company's internal job bank for a minimum of five business days, excluding selection decisions made as part of a restructuring, consolidation, or reorganization.  Currently, Senior Management positions include Regional Presidents (PCG) and Senior Directors of Brokerage for WBS ("Senior Management").  WFA will commit to having a diverse pool of candidates for posted Senior Management positions.

2.  Branch Manager Assessment Center Program.  WFA will maintain its Branch Manager Assessment Center program or program of comparable efficacy for the duration of the Programmatic Relief Period.  WFA will encourage a diverse pool of applicants for the Program and a diverse slate of evaluators.

K.  Assignment of WBS FAs to Banking Stores.

1.  The WBS Leadership Team, with consultation from the Focus Group, will establish a process for WBS FAs to have the opportunity to indicate on a periodic basis (not to exceed semi-annually) an interest in a select number of stores (not to exceed three) to which they would be interested in moving should it become vacant.

2.      Before making store assignments or filling store vacancies, WBS management will review the store interest selections identified in section K.1 above, and deem the FAs who have indicated interest in that particular store as part of the pool in consideration for the assignment or vacancy, provided that the FA meets minimum criteria, to be determined by the Leadership Team, with consultation from the Focus Group.

3.      At all times, WBS management will retain the discretion to make store assignments or fill store vacancies based on business needs and in the best interest of WBS's clients.

4.      The Coaches also will have access to the database to assist in development discussions with FAs.

5.      For experienced FA recruits and Trainees, WBS will provide information on the number of affluent households (e.g., whether the store is designated as AHOS or such similar designation) for the particular store to which the FA would be assigned, along with appropriate disclaimers that store assignments may change at the discretion of WBS management and/or in the best interest of clients.

L.      General Non-Discrimination Provisions.

1.      WFA reaffirms its commitment to the prohibition against discrimination on the basis of race with respect to compensation, business opportunities, and other terms and conditions of employment.  Further, WFA reaffirms its commitment to the prohibition against retaliation for reporting race discrimination, participating in any internal complaint process, participating in this or any discrimination settlement, filing a lawsuit or complaint with any outside agency or entity alleging race discrimination, or for refusing to participate in race discrimination.

2.       Nothing in this Settlement will prevent a Class Member from pursuing whatever legal rights or remedies he or she otherwise may have with respect to any individual claim not covered by the Released Claims or, in the case of a Named Plaintiff, the Named Plaintiff Release.

M.       <u>Monitoring and Reporting</u>.

1.       WFA will meet with Class Counsel on an annual basis to discuss and confirm the Firm's compliance with the Programmatic Relief. WFA will provide information demonstrating the progress made with regard to the Programmatic Relief and to otherwise discuss equal opportunities for African Americans. WFA will also set forth any new programs and policies that were implemented to increase the representation and success of African American FAs and FA Trainees and available information regarding the efficacy of those programs.

VIII.    <u>MONETARY RELIEF</u>

A.       <u>Settlement Fund</u>.

1.       No later than ten (10) days after Preliminary Approval of this Settlement Agreement, Defendant shall pay by wire transfer or otherwise transmit to the Depository Bank the sum of thirty-five million five hundred thousand dollars and no cents ($35,500,000.00 or $35.5 million). This payment is made in order to satisfy the claims of all Named Plaintiffs and Settlement Class Members, as well as for the other purposes identified in this Settlement Agreement. The $35.5 million so transferred, together with any interest subsequently earned thereon, shall constitute the Settlement Fund. The $35.5 million transferred into the Settlement Fund by Defendant shall, with the additional Employer Payroll Tax Payment described below in Section VIII.G.2(b), constitute the total monetary outlay by Defendant in connection with: (a) the

resolution of this matter; (b) this Settlement Agreement (and attachments); and (c) the dismissal of this Action.

2. The $35.5 million paid into the Settlement Fund is inclusive of payment for:

(a) all Monetary Awards paid to Settlement Class Members, including Named Plaintiffs, which are to be distributed pursuant to Section VIII.D below;

(b) all attorneys' fees and costs awarded by the Court to Class Counsel, including those relating to securing court approval of the Settlement, the claims process and monitoring of the Settlement Agreement, as described in Section IX below, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement;

(c) all Service Awards to Named Plaintiffs, pursuant to Section IX below;

(d) all costs in connection with the administration of the Settlement Agreement and the Settlement Fund including, but not limited to, those related to sending Notice, claims processing, legal advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below, other than the Employer Payroll Tax Payment), the Claims Administrator's fees and expenses, and the fees and expenses of the Neutrals and Special Master;

(e) applicable federal, state, and local income taxes, as well as the employee's portion of applicable payroll taxes.  However, as provided in Section VIII.G.2(b), the $35.5 million dollar payment to the Settlement Fund does not include Defendant's share of

payroll taxes or contributions (*e.g.*, FUTA, SUTA, FICA and Medicare) which will be paid separately by Defendant to the Claims Administrator.

B.    Administration of Settlement Fund by Trustees.

1.    Pursuant to Rule 53 of the Federal Rules of Civil Procedure, the Court shall appoint a Special Master who shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management and distribution of the Settlement Fund.

2.    The Claims Administrator shall serve as a Trustee of the Settlement Fund with regard to payment of valid claims and reporting and paying taxes on such awards.

3.    The Settlement Fund will be placed in an account titled in the name of Wells Fargo Advisors, LLC Financial Advisor Race Discrimination Settlement Fund, a Qualified Settlement Fund, intended by the Parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq*.

4.    Class Counsel shall act in a manner necessary to qualify the Settlement Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq*., and to maintain that qualification.

C.    Claims Filing and Resolution Procedures for Monetary Awards to Named Plaintiffs and Settlement Class Members.

1.    Claims Filing Procedures for Monetary Relief:  All Settlement Class Members, including the Named Plaintiffs, may be eligible to receive a monetary award from the Settlement Fund ("Monetary Award").  All Settlement Class Members, including the Named Plaintiffs, who seek a Monetary Award must complete and submit a Claim Form to the Claims Administrator, which must be received by the Claims Administrator no later than forty-five (45) days after notice of Final Approval is mailed to Class Members.  The Claim Form may be

submitted in writing or via secure electronic submission and must be signed or electronically affirmed, under penalty of perjury. Settlement Class Members and Named Plaintiffs shall complete the Claim Form in accordance with the procedures and requirements set forth on the Claim Form. Settlement Class Members who file a Claim Form must notify the Claims Administrator of any change of address. A failure to notify the Claims Administrator of a change of address may result in the forfeiture of a Monetary Award. Monetary Awards will be determined after all Claim Forms are submitted, and will be reviewed and approved by the Special Master appointed by the Court, as described in Section VIII.C.5. Claim Forms shall be maintained by the Claims Administrator and shall remain strictly confidential. Neither the Claim Forms nor the contents thereof shall be disclosed to Defendant.

2. <u>Claim Form Options for Settlement Class Members</u>. The Claim Form shall be completed in its entirety, including responses to questions concerning allegations of race discrimination, financial losses, and any alleged emotional distress. In order to seek financial recovery for any period after WFA employment, Settlement Class Members must submit documents or other supporting materials regarding post-WFA income and work history. In order to seek financial recovery for alleged emotional distress, Settlement Class Members must complete the section of the Claim Form regarding emotional distress and may submit any additional documentation they deem appropriate.

3. <u>Claims Resolution Process for Settlement Class Members who Submit a Claim Form</u>. Settlement Class Members who timely submit a completed Claim Form will have their claims reviewed by an independent, qualified third-party neutral ("Neutral") in the Claims Resolution Process ("CRP"), as described more fully below.

(a) The claims of Settlement Class Members who participate in the

CRP will be evaluated by one or more Neutrals from a panel of qualified Neutrals selected by the Special Master in consultation with Class Counsel. All information communicated by Class Members during the CRP shall remain confidential and shall not be disclosed to Defendant. The Neutrals selected will have substantial training and experience with employment discrimination claims, but cannot be full-time, practicing employment law attorneys. The Neutrals and Special Master will receive information from Class Counsel regarding Defendant's policies and practices and the evidentiary record and legal theories supporting the Class Claims.

     (b)  Each Settlement Class Member who participates in the CRP will also have an opportunity to meet individually with a Neutral or Neutrals for up to a 75 minute session in order to present aspects of his or her claims and answer questions from the Neutral(s) (the "Interview"). The Interview can take place via an Internet video-conference or in person, provided that confidentiality and privacy are maintained. Settlement Class Members who wish to attend the Interview in person but cannot afford to travel to the Interview can submit a request for a travel advance against any Monetary Award. Class Counsel shall ensure that an attorney is present at the Interview to assist the Settlement Class Member. Any Class Member shall also be entitled to have his or her claim resolved based solely on the written claim form submitted if he or she prefers to waive the Interview. Nothing in this Settlement prohibits any Settlement Class Member from retaining his or her own attorney, at his or her own expense, to appear at the Interview. Any attorney appearing at the Interview must sign a copy of a confidentiality agreement, in a form acceptable to the Parties.

     4.  <u>Neutral Evaluation of Claims</u>. In evaluating individual claims, the Neutrals shall consider information in the Claim Form and any supporting documents submitted by Settlement Class Members and the Interview, as well as information submitted by Defendant

identifying prior release agreements or judicial determinations.

(a)    Factors and information the Neutrals may weigh include but are not limited to the following:

- Length of service at WFA;

- Length of employment as an FA or FA Trainee within the Class Period;

- The Settlement Class Member's experiences with regard to account transfers and distributions; teaming and pooling; assignment of territory or bank branch; business opportunities; managerial support; resources available; office environment and other treatment;

- Such other factors as the Neutral and Special Master agree upon; and

- Whether the Settlement Class Member released some but not all of his or her claims and, if so, the date of any such release of claims.

(b)    After evaluating each Settlement Class Member's claims, the Neutrals shall recommend an individual Monetary Award, if any, for each Settlement Class Member.

(c)    Any determination made by the Neutral or panel of Neutrals, including the fact or recommended amount of a Monetary Award, will be inadmissible in this Action or any other subsequent proceeding for any purpose other than to enforce the Settlement Agreement or for any potential set off as described in Section VIII.E, and shall not be deemed to be a finding as to the merits of any claim.

5.    Special Master.  The Court shall appoint Lynn Cohn as Special Master under Federal Rule of Civil Procedure 53 to monitor and assist with the Settlement.  The Special Master shall participate in some of the Interviews and assessment of claims in the CRP; make reports to Class Counsel and the Court as necessary in a confidential and/or *ex parte* manner;

select Neutrals to participate in the CRP, who will also be appointed under Fed. R. Civ. P. 53; review and approve any contracts and the bills of the Neutrals and others performing services in the settlement process (all of which shall be paid by the Claims Administrator out of the Settlement Fund); and perform the below and other similar duties requested by Class Counsel or the Court.

(a)     The Special Master shall have the discretion to determine Settlement Class membership in terms of whether the individual satisfies the Class definition set forth in Section III.D.1.  To the extent that any individuals claim to be a member of the Class but are not in the list provided by Defendant pursuant to Section IV.C.2, they will need to submit to the Claims Administrator materials or documents showing that they in fact satisfy the Class definition.  If the Special Master determines that any such individuals are Class Members, and that they are entitled to a Monetary Award, such Monetary Awards shall be paid out of the $35.5 million Settlement Fund.

(b)     The Special Master shall have the discretion whether to allow late Claim Forms submitted by Settlement Class Members for good cause shown.

(c)     The Special Master shall review all of the proposed Monetary Awards recommended by the Neutrals in the CRP for consistency and fairness and shall render a final determination as to the Monetary Award, if any, which should be paid to each Claimant in the Claims Resolution Process.

(d)     The Special Master will also establish, for tax purposes, the allocation of Monetary Awards for each Claimant to wages, interest, compensatory damages or other tax character as are appropriate based on the principles set forth in the IRS Regulations.

(e)     After determining the allocation of Monetary Awards, the Special

Master shall prepare a master report of all Monetary Awards (including tax allocations thereof) and provide it to the Claims Administrator for payment.

(f)     There shall be no appeal from the final Monetary Awards determined by the Special Master, which shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body, including without limitation this Court.  As will be reflected in the final order approving this Settlement, Defendant, Defendant's Counsel, and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Special Master.

(g)     The total amount of the Monetary Awards shall not exceed the net amount remaining in the Settlement Fund after payment of: (i) all attorneys' fees and costs as described in Section VIII.A.2.b; (ii) Service Awards to the Named Plaintiffs; (iii) all costs in connection with the administration of the Settlement Agreement and the Settlement Fund as described in Section VIII.A.2.d; and (iv) applicable taxes, excluding Defendant's share of payroll taxes, as described in Section VIII.A.2.c.

(h)     The Claims Administrator shall maintain the master report of all Monetary Awards for a period of seven (7) years after the entry of Final Approval.  Defendant shall have access to individual allocation amounts upon written notice to Class Counsel that the particular individual(s) for whom Defendant seeks this information has challenged the Class Member Release or Named Plaintiff Release or has threatened to assert a claim included in the Released Claims or for other good cause.

6.     Confidentiality of Claims Resolution Process and Settlement Administration.  Before receiving any Confidential or Confidential-Attorneys Eyes Only Information, the Claims Administrator, Special Master, each Neutral, and any other third-party

involved in the claims process or the administration of this Settlement Agreement must sign a confidentiality agreement in a form agreed to by the Parties. Claims Forms completed by Class Members, information submitted by Class Members, the meetings with the Neutrals, and all other aspects of the Claims Resolution Process will be confidential.

        D.      <u>Distribution of Individual Monetary Awards.</u>

        1.      Within ten (10) business days after the Special Master has approved awards to Settlement Class Members, the Claims Administrator shall send a Notice of Award to each eligible Claimant indicating the amount, if any, of the Monetary Award determined by the Special Master for that Claimant, along with a check with their individual Monetary Award Payment. The face of each such check shall clearly state that the check must be cashed within four (4) months. The back of each such check to Claimants will state: "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this matter. This Release will become effective on the Effective Date."

        2.      Any undistributed funds that remain one year after the mailing of the Notice of Award due to unsubmitted Named Plaintiff Releases and/or due to uncashed checks shall be distributed to 501(c)(3) organizations advancing career opportunities for African Americans including career opportunities in the financial services industry, as selected and agreed upon by Class Counsel and Defendant's Counsel.

        3.      The Claims Administrator shall provide Defendant's Counsel with copies of all executed Named Plaintiff Releases within ten (10) business days after the expiration of the deadline for the Claimants to return executed Named Plaintiff Releases. The Claims Administrator shall also retain for seven (7) years copies of Monetary Award checks negotiated

by Claimants and make them available to Defendant upon notice to Class Counsel of good cause (e.g., that the particular individual(s) for whom Defendant seeks this information has challenged the Class Member Release or Named Plaintiff Release or has threatened to assert a claim included in the Released Claims).

E. <u>Non-Admissibility of Fact of Monetary Award (or Non-Award)</u>.  Except to the extent it would constitute a set off in an action for damages claimed for any period covered by this Settlement, neither the fact nor amount of a Monetary Award, nor the fact of any non-award, shall be admissible in any other proceeding for any purpose other than to enforce the Class Member Release or Named Plaintiff Release, nor shall it be deemed to be a finding as to the merits of any claim.

F. <u>Confidentiality Regarding Amount of Monetary Award.</u> All Claimants receiving Monetary Awards will be required to keep the amount of their Monetary Award confidential, except that they may disclose the amount to immediate family, legal counsel, or tax advisors, or as otherwise required by law.

G. <u>Tax Treatment</u>.

1. <u>Qualified Tax Status and Tax Responsibilities</u>.  The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by Class Counsel and Claims Administrator under the Court's supervision.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

2. <u>Payment of Federal, State, and Local Taxes</u>.  The Parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting,

which will be handled as follows:

(a)     The Claims Administrator shall serve as trustee of the portion of the Settlement Fund devoted to paying claims ("Claims Fund") and shall act as a fiduciary with respect to the handling, management, and distribution of the claims, including the handling of tax-related issues and payments.  Specifically, the Claims Administrator shall be responsible for withholding, remitting and reporting of the Claimants' share of the payroll taxes from the Claims Fund, and Defendant shall be responsible for the employer's share of payroll taxes as set forth in this Section (b) below.

(b)     The Claims Administrator shall inform Defendant in writing of the employer's share of all taxes or contributions (*i.e.*, FUTA, SUTA, FICA and Medicare) required to be paid by Defendant.  Defendant shall, within twenty (20) business days of such notice, remit all such payments to the Claims Administrator for payment to appropriate taxing authorities ("Employer Payroll Tax Payment").  Defendant shall also have no obligation to pay the employer's share of taxes and contributions pertaining to any Class Members who opt out.

(c)     The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify Defendant for any penalty arising out of an incorrect calculation and/or interest with respect to late payment of the same.

(d)     Subject to the Claims Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099-INT.  The amounts paid for emotional distress, if any, shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

(e)     Except with respect to the Employer Payroll Tax Payment, which will be paid by Defendant, the Claims Administrator shall be responsible to satisfy from the Claims Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, Medicare, and any state employment taxes.

(f)     The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs and expenses subject to reporting), and any and all taxes, penalties, and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

(g)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund.  Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund.  The Parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this

Section.

H. <u>Defendant Has No Further Obligation, Liability or Responsibility</u>. Other than Defendant's responsibility for the employer's share of payroll taxes as discussed in Section VIII.G.2(b), Defendant shall have no withholding, reporting, or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Settlement Class Members. Moreover, Defendant shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, or the disbursement of any monies from the Settlement Fund except for (1) its obligation to pay the $35.5 million into the Settlement Fund as described in Section VIII.A; (2) its obligation related to the Employer Payroll Tax Payment as set forth in Section VIII.G.2(b); and (3) its agreement to cooperate in providing information which is necessary for Settlement administration set forth herein. The Claims Administrator shall indemnify Defendant for any tax liability, damages, or penalties arising out of their performance of any of their duties required by this Settlement Agreement.

IX. <u>ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL AND SERVICE AWARDS TO NAMED PLAINTIFFS</u>.

A. As discussed above in Section VIII.A.2, all of Class Counsel's fees and costs, including those in connection with securing Court approval of this Settlement Agreement, the Claims Process and any monitoring of this Settlement Agreement, shall be paid from the Settlement Fund, following approval of those attorneys' fees and costs by the Court. Subject to approval by the Court, Class Counsel will seek attorneys' fees of 25% of the Settlement Fund, plus reimbursement of reasonable costs and expenses. Defendant shall not object to Class Counsel's requests for fees and costs up to the amounts stated herein.

B. The Named Plaintiffs have invested substantial time and effort assisting Class

Counsel and serving as fiduciaries for the Settlement Class. As is standard in class litigation, Class Counsel intends to petition the Court for Service Awards to Named Plaintiffs for their efforts and service to the Settlement Class. Defendant shall not object to Plaintiffs' motion for Service Award payments up to an amount of $175,000 per Named Plaintiff.

X.      ENFORCEMENT AND DISPUTE RESOLUTION MECHANISMS

A.      Defendant and Class Counsel will meet at least once annually regarding compliance and may confer more frequently at their discretion or as dictated by information either side gathers.

B.      The Parties will work diligently and in good faith to resolve all disputes that may arise between them concerning the rights, obligations, and duties of the Parties to this Agreement. In the event that the Parties cannot agree, the Parties will attempt to resolve the dispute with the facilitation of a mediator. In the event that mediation is unsuccessful, then either party may institute an enforcement action.

C.      Enforcement of this Agreement shall be prosecuted by Class Counsel or Defendant's counsel only, not third Parties. In any action brought to enforce this Agreement, the Court may, in its discretion, award reasonable attorneys' fees and expenses to the prevailing party.

XI.     CONFIDENTIALITY.

A.      Public Comment. Other than necessary disclosures made to the Court, the content of the Parties' settlement negotiations and all related information shall be held confidential by Counsel for the Parties.

B.      Documents and Information Produced by Defendant and Class Counsel. All proprietary and confidential documents, data, or information that have previously been provided

to either Defendant or Class Counsel as of the date this Settlement Agreement is executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential. Said documents and information shall not be disclosed to anyone other than the mediator or the Court in connection with any proceeding to enforce any provision of this Settlement Agreement, or as otherwise provided in this Settlement Agreement. If such disclosure is deemed necessary by Class Counsel or Defendant, Class Counsel or Defendant shall identify and disclose to the other party such documents and information deemed necessary to disclose at least ten (10) business days prior to filing such documents with any court, and, if a party so requests, shall seek permission to file said documents with this Court under seal.

      C.      <u>Return or Disposal of Confidential Documents and Information.</u> All proprietary and confidential documents or information that have previously been provided to Class Counsel or to Defendant as of the date this Settlement Agreement is executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement, shall, upon request, be destroyed or returned to counsel as follows:

      1.      After the expiration of the four year term of this Settlement Agreement all proprietary and confidential documents or information provided to Class Counsel or Defendant and designated "Confidential for Settlement Purposes Only" or similar designation pursuant to the Confidentiality Agreement, or that have been produced in confidence pursuant to any provision of this Settlement Agreement, and all copies of such documents or information other than those records and information required to be maintained by law or the rules of professional responsibility, shall, upon request, be returned to counsel for the producing party or be destroyed. Upon request, certification of such destruction shall be provided to counsel for the producing

party.

2.    The preceding paragraphs of this Section are intended to supersede those provisions of the "Confidentiality Agreement For Settlement Discussions" earlier executed by counsel for the parties that address the timing of the return or destruction of proprietary and confidential documents or information provided to Class Counsel or Defendants.  All other provisions of the "Confidentiality Agreement For Settlement Discussions" remain in full effect.

3.    Nothing in the preceding paragraphs of this Section shall preclude any party from responding to a lawful discovery request, subpoena or court order; provided, however, that the party against whom such discovery is sought or such subpoena or order is directed agrees to provide prompt notice and a copy of same to counsel for the other parties to this Settlement Agreement.  Nor shall anything in the preceding paragraphs preclude any party from retaining attorney work product.

## XII.    OTHER TERMS AND CONDITIONS OF SETTLEMENT.

A.    <u>Governing Law</u>.  The Parties agree that federal law shall govern the validity, construction, and enforcement of this Settlement Agreement.  To the extent that it is determined that the validity, construction, or enforcement of this Settlement Agreement, or the Named Plaintiff Release thereunder pursuant to its terms is governed by state law, the substantive law of Illinois shall apply.

B.    <u>Entire Agreement</u>.  This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the Parties with respect to the Settlement. This Settlement Agreement does not impose any obligations on the Parties beyond the terms and conditions stated herein.  Accordingly, this Settlement Agreement shall not prevent or preclude Defendant from revising its employment practices and policies or taking other personnel actions

during the term of this Settlement Agreement so long as such actions would not violate the terms of this Settlement Agreement.

C.     <u>Modifications</u>.  Except as specifically provided for herein, this Settlement Agreement may not be amended or modified except with the express written consent of the Parties.

D.     <u>Exhibits</u>.  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

E.     <u>Notices to Counsel</u>.  All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to counsel for the respective Parties (specifically, to Linda D. Friedman for the Class and Kenneth J. Turnbull of Morgan, Lewis & Bockius LLP for Defendant) at their respective addresses set forth below (or at such other address as any such party or counsel may designate in a subsequent notice).

F.     <u>Failure to Insist on Strict Compliance</u>.  The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

G.     <u>Settlement Agreement Binding</u>.  This Settlement Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

H.     <u>No Drafting Presumption</u>.  All Parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

I.        Dispute As To Meaning of Agreement Terms.  In the event of any dispute or

disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement

or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the

Parties agree that such dispute will be resolved and adjudicated only in accordance with the

dispute resolution provisions of Section X of this Settlement Agreement.

J.        Interpretation of Terms.  Whenever possible, each provision and term of this

Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

K.        Paragraph and Section Headings.  Paragraph and section headings are for

convenience of reference only and are not intended to create substantive rights or obligations.

L.        Counterparts.  This Settlement Agreement may be executed in counterparts.  Each

signed counterpart together with the others shall constitute the full Settlement Agreement.

M.        Agreement Binding.  As of the date on which counsel for the Parties execute this

Settlement Agreement, this Settlement Agreement will be binding in all respects, unless the

Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated.

N.        Parties' Authority.  The signatories hereby represent that they are fully authorized

to enter into this Settlement Agreement and to bind the Parties to the terms and conditions

hereof.  All of the Parties acknowledge that through this Settlement Agreement and its

attachments, they and the Class Members are being advised that they may consult an attorney

regarding their participation in this Settlement Agreement, and the Parties acknowledge that they

in fact have been represented by competent, experienced Counsel throughout all negotiations

which preceded the execution of this Settlement Agreement, and this Settlement Agreement is

made with the consent and advice of Counsel who have jointly prepared this Settlement

Agreement.

Signed on February 8, 2017 on behalf of all Parties by:

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Grace E. Speights*
Grace E. Speights (*pro hac vice*)
1111 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: 202.739.3000
gspeights@morganlewis.com

Michael S. Burkhardt (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5130
mburkhardt@morganlewis.com

Kenneth J. Turnbull
101 Park Avenue
New York, NY 10178
Telephone: 212.309.6055
kturnbull@morganlewis.com

*Attorneys for Defendant*

STOWELL & FRIEDMAN, LTD.

*/s/ Linda D. Friedman*
Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison
Suite 2600
Chicago, Illinois  60606
(312) 431-0888

lfriedman@sfltd.com

*Attorneys for the Class*